UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


IN RE:   BONITA B. PHILLIPS  AND
JEFFREY S. PHILLIPS,

                  Debtors.

_____

EPIC AVIATION, LLC,

                  Appellant,

vs.                          Case No.  2:12-cv-585-FtM-29
                          Bankr. No. 9:06-bk-5685-FMD
                          Bankr. No. 9:06-bk-07489-FMD
                          (Jointly Administered)

BONITA B.  PHILLIPS and JEFFREY S.
PHILLIPS,

                  Appellees.

_____


EPIC AVIATION, LLC,

                  Appellant,

vs.                          Case No.  2:12-cv-669-FtM-29
                          Bankr. No. 9:06-bk-5685-FMD
                          Bankr. No. 9:06-bk-07489-FMD
                          (Jointly Administered)

BONITA B.  PHILLIPS, and JEFFREY S.
PHILLIPS,

                  Appellees.

_____


EPIC AVIATION, LLC,

                  Appellant,

vs.                                    Case No.  2:13-mc-5-FtM-29[1]
                                       Bankr. No. 9:06-bk-5685-FMD
                                       Bankr. No. 9:06-bk-07489-FMD
                                       (Jointly Administered)

BONITA B. PHILLIPS and JEFFREY S.
PHILLIPS,

                     Appellees.
_____

## OPINION AND ORDER

This matter comes before the Court on three appeals filed by Epic Aviation, LLC (Epic Aviation) from orders of the Bankruptcy Court.  Epic Aviation refers to these appeals as the Auction Order Appeal (2:12-cv-585-FTM-29), the Lis Pendens Order Appeal (2:12-cv-669-FTM-29), and the Sale Order Appeal (2:13-cv-113-FTM-29).  The Court will do likewise, as well as referring to the appeals as the First Appeal, the Second Appeal, and the Third Appeal respectively. The Court heard oral arguments on March 5, 2013. Supplemental authority was subsequently submitted.  (Docs. #26, 27.)

## I.

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. 28 U.S.C. § 158(a); In re Bullock, 670 F.3d 1160, 1163 (11th Cir. 2012)(citing In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th

_____

[1]The underlying appeal, 2:13-cv-113-FTM-29, has since been transmitted but was not yet ripe at the time of oral arguments. The Briefing was completed and the appeal ripe as of April 15, 2013.

Cir. 1994)), cert. granted, 133 S. Ct. 526 (2012).  The legal conclusions of the bankruptcy court are reviewed de novo, while findings of fact are reviewed for clear error.  In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed."  Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); In re Walker, 515 F.3d 1204, 1212 (11th Cir. 2008).  Where a matter is committed to the discretion of the bankruptcy court, the district court must affirm unless it finds that the bankruptcy court abused its discretion.  Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1238 (11th Cir. 2006).  A court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, makes findings of fact that are clearly erroneous, or applies the law in an unreasonable or incorrect manner.  Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., No. 12-10673, ____ F.3d ____, 2013 WL 1149936, *4 (11th Cir. Mar. 21, 2013).  "The abuse of discretion standard allows a range of choices for the [bankruptcy] court, so long as any choice made by the court does not constitute a clear error of judgment."  Id. (citation omitted).

## II.

Bonita Phillips (Bonita Phillips or Mrs. Phillips) and Jeffrey Scott Phillips (Jeffrey Phillips or Mr. Phillips), her husband (collectively Debtors), filed separate Chapter 7 bankruptcy petitions in late 2006.  The cases were consolidated in the Bankruptcy Court for administrative purposes only, and Diane Jenson (Trustee) was appointed as trustee in both cases.

Epic Aviation was and is a creditor of Mr. Phillips, and has a pre-bankruptcy judgment against him in the principal amount of $322,603.30.  Epic Aviation's judgment constituted approximately seven percent of the claims against Mr. Phillips in his bankruptcy case.  Epic Aviation was not a creditor of Mrs. Phillips and had no claim against Mrs. Phillips in her bankruptcy case.

In April, 2007, the Trustee filed objections to exemptions claimed by each Debtor; the Trustee also filed an adversary action against Bonita Phillips seeking to defer her bankruptcy discharge. In May 2007, the Bankruptcy Court approved mediation of these disputes.

**A.  The 2007 Settlement Agreement:**

The two-page Mediated Settlement Agreement dated May 14, 2007 (Settlement Agreement) (Bankr. Doc. #184, Exh. A)[2] resolved "all

---

[2]The Court will make reference to the documents filed in the first appeal in 2:12-cv-585-FTM-29 and the underlying bankruptcy case for 9:06-bk-5685-FMD throughout this Opinion and Order, unless otherwise indicated.  The Court will refer to the appellate dockets (continued...)

matters and disputes between" the Trustee and the Debtors.  The relevant terms and conditions were:  (1)  the Trustee would be paid $825,000[3] from the sale of Debtors' home in Naples, Florida; (2) upon payment, the Trustee and the Debtors would exchange mutual general releases; (3) the Debtors' home would "be put on the market promptly and the Debtors will keep the Trustee advised of the status of the sale and of any offers received;" (4) the Trustee was to be given a lien on the home, subordinate to two mortgages and real estate taxes; (5) the intentional failure of Debtors to pay the Trustee the $825,000 would constitute a breach of the Settlement Agreement which "shall be grounds for revocation of the Debtors' discharge;" and (6) the Trustee's lien on the home was property of the estate and protected by the automatic stay until paid in full.  (Id., p. 1.)  The Settlement Agreement did not provide any deadlines for the sale of the home or the payment of the money to the Trustee, and did not set a price at which the home would be offered for sale.

---

[2](...continued)
as "Doc." and the bankruptcy case docket as "Bankr. Doc."  Copies of the relevant documents are included in the record transmitted by the Bankruptcy Court, or otherwise judicially noticed and accessible through PACER.

[3]The Trustee was to be paid $1,000,000 if Epic Aviation's adversary proceeding against Mr. Phillips was dismissed with prejudice, but only $825,000 if the adversary proceeding was not dismissed by Epic Aviation.  The adversary proceeding, 9:07-ap-00181-ALP, was not dismissed.

On May 24, 2007, the Debtors and the Trustee filed a Joint Motion for Authority to Compromise Controversies Between Diane Jensen, The Chapter 7 Trustee and Bonita and Jeffrey Phillips (Bankr. Doc. #78). This joint motion summarized the terms of the Settlement Agreement and explained why the compromise settlement was in the best interests of the parties.

Epic Aviation had initially filed an objection to the joint motion to approve the Settlement Agreement, but withdrew its objection. (Bankr. Doc. #86; Doc. #1-25, p. 3.) At a September 5, 2007 hearing, the Trustee and Debtors' counsel told the Bankruptcy Court that there was no time limit on the sale of the home because the real estate market was bad. The parties also told the Bankruptcy Court that the asking price would be $6 million, although they did not anticipate actually getting that much. (Doc. #1-25, pp. 5-6.)

On October 9, 2007, the Bankruptcy Court issued an Order Approving Joint Motion for Authority to Compromise Controversies Between Diane Jensen, The Chapter 7 Trustee and Bonita and Jeffrey Phillips (the Settlement Agreement Approval Order). (Bankr. Doc. #102.) In relevant part, the Settlement Agreement Approval Order granted the joint motion, approved the compromise Settlement Agreement, directed payment of $825,000 from the sale of the home, and provided the Trustee a lien against the Debtors' home to secure their obligations under the Settlement Agreement, subordinate to

two specified mortgages and any real estate taxes.  The Settlement Agreement Approval Order also authorized and directed the parties take all steps necessary to effectuate and consummate the settlement, including that the Debtors "shall" place the home "on the market" for sale.  The Settlement Agreement Approval Order further provided that the intentional failure of Debtors to pay the Trustee the $825,000 "shall constitute a breach of the compromise and shall be grounds for the revocation of the Debtors' discharge." Like the Settlement Agreement, the Settlement Agreement Approval Order did not set forth any restriction on the timing or price for the sale of the home.  The validity of the Settlement Agreement and the Settlement Agreement Approval Order have never been challenged, and none of the current appeals attempt to do so.  (See id.)

The Settlement Agreement lien was recorded in the public records in Collier County, Florida.  (Bankr. Doc. #102, ¶ 4.) Debtors initially placed their home on the market for sale with an asking price of $6 million. (Doc. #1-25, p. 5.)  The home did not sell, and Debtors declined to reduce the asking price.

In late 2010, the Trustee filed a Motion to Compel (Bankr. Doc. #147) seeking to compel Debtors to reduce the asking price of the home.  The Trustee argued that the Settlement Agreement's requirement to place the home on the market implicitly included the obligation of a realistic asking price.  The Trustee conceded that the house had been on the market continuously, and that the asking

prices started at $6.295 million and was $4.5 million at the time of the hearing.   (Bankr. Doc. #147, ¶ 11.)   The Trustee further admitted that she did not have sufficient information to determine if the asking price was inflated or achievable (Doc. #1-31, p. 4), but requested an evidentiary hearing to determine whether Debtors were marketing the house in good faith (id., p. 6).   The Bankruptcy Court denied the motion without prejudice to the initiation by the Trustee of an adversary proceeding.   (Doc. #28.)   The Trustee did not file such an adversary proceeding, and the home continued to be on the market at a price that did not result in a sale.

**B.   The Proposed Compromise of the Settlement Agreement:**

In other litigation, the Bankruptcy Court denied Mr. Phillips a Chapter 7 bankruptcy discharge and the District Court affirmed the decision of the Bankruptcy Court. See In re Phillips, 2:10-cv-212-FTM-29, 2011 WL 1196427 (M.D. Fla. 2011).   In April 2012, the Eleventh Circuit Court of Appeals affirmed the undersigned's Opinion and Order in the adversary proceeding brought by Epic Aviation against Mr. Phillips.   In re Phillips, 476 F. App'x 813 (11th Cir. 2012). The final judgment denied Mr. Phillips a Chapter 7 bankruptcy discharge under 11 U.S.C. § 727(a)(4)(A) for making false oaths in connection with the official schedules and statement of financial affairs in his bankruptcy case.   Epic's adversary proceeding, 9:07-ap-181-ALP was closed on May 11, 2012.

In about July 2012, Debtors proposed to compromise their obligations under the 2007 Settlement Agreement by paying $500,000 to the Trustee in exchange for a release of the lien on their home. The Trustee accepted this offer, and on July 31, 2012, the Trustee filed a Motion to Approve Compromise of Controversy Between Trustee and Jeffrey S. Phillips. (Bankr. Doc. #167.)  The Trustee felt this compromise was in the best interest of the bankruptcy estate because the house had remained unsold for five years.  Epic Aviation objected to the compromise, and offered to pay the Trustee $525,000 for the Trustee's rights under the Settlement Agreement. (Bankr. Doc. #170; Doc. #5, p. 7.)

At a September 18, 2012 hearing on the motion to approve the proposed compromise of the Settlement Agreement, the Trustee orally requested a continuance of the hearing in order to allow the parties to reach a compromise agreement or have a public auction of the Trustee's rights under the Settlement Agreement. Epic Aviation and the Debtors agreed to the request. (Doc. #5, pp. 8-9.)  The Bankruptcy Court authorized the Trustee to serve Notice with shortened deadlines to submit written objections, to submit a bid, and to conduct the auction.  (Id.; Bankr. Doc. #187.)

Later that day the Trustee filed a Report and Notice of Intention to Sell Property of the Estate at Public Sale (Bankr. Doc. #184) stating an intent to hold a public sale of all the Trustee's rights and interests in and to the Settlement Agreement.

This Notice stated that the "Price" was "Highest Bid" and the sale would be "to" the "Highest Bidder."  The "Terms" of the auction were:  (1)  The minimum bid would be $525,000.00, with 10% down and the balance to be paid within 48 hours of the conclusion of the telephonic auction; (2) all qualifying bids were to be received by the Trustee by 5 p.m. on September 27, 2012; (3) the telephonic auction would be conducted on September 28, 2012 at 2 p.m., if at least two qualifying written bids and deposits were received; (4) the balance of the high bid was due within 48 hours of the conclusion of the auction; (5) if the highest bidder failed to fulfill the auction terms, the Trustee "will sell the rights to the next highest bidder at the last bid price;" and (6) auction bids were to be in $25,000 increments, subject to the increments being lowered by the Trustee during the auction.

**C.  The Auction:**

The telephonic auction was conducted on September 28, 2012. (Doc. #2.)  The bidding commenced at $525,000, and eventually Debtors bid $750,000.  Epic Aviation then bid $825,000.  Rather than exceed this bid, Debtors said they would stop bidding and just pay off the full original Settlement Agreement amount of $825,000. (Bankr. Doc. #189, ¶ 4.)  After some discussion off the record, the Trustee stated that if Mr. Phillips was willing to pay the $825,000 (less the deposit) within 48 hours, the Trustee would not sell her rights under the Settlement Agreement, but would accept Debtors'

-10-

full payoff of the Settlement Agreement.    (Doc. #2, pp. 9-10.) Epic Aviation objected, stating that Debtors no longer had a right to pay the Settlement Agreement amount after participating in the auction, and that Debtors did not win the auction because they were not the highest bidder.  (Id., pp. 10-11.)  The Trustee gave Mr. Phillips until October 2, 2012, to put the money into the Trustee's trust account, where it would remain pending a hearing in the Bankruptcy Court to address Epic Aviation's objection. (Id., p. 14.)

## D.  Debtors' Emergency Motion, Auction Order, and Appeal:

On October 2, 2012, -- the Debtors' deadline to provide the $825,000 to the Trustee's escrow account -- the Debtors did not provide the Trustee with the $825,000.  Instead, the Debtors filed an Emergency Motion for Enlargement of Time to Make Settlement Payment to the Trustee and for Order Authorizing the Sale of the Debtors' Homestead Property (Bankr. Doc. #189).  In the Emergency Motion, the Debtors argued that the 48 hour payment deadline should not apply because they were fulfilling the Settlement Agreement, not complying with the auction terms.  The Debtors stated that they had received a verbal offer to purchase the property for $4.175 million, which was sufficient to pay all mortgages and the $825,000.00 to the Trustee, however "issues have arisen relating to Epic's conduct during the auction and Epic's judgment against Debtor, Jeffrey S. Phillips only." (Id., ¶ 6.)  The Debtors stated

that a 10% deposit had been wired and that they were prepared to immediately wire an additional $500,000 pending the closing of the sale, but that they did not believe that they should have to pay the full $825,000 "due to the unknown agenda of Epic." (Id., ¶ 8.) The Debtors indicated that the Trustee's prior motion to compromise "has essentially [been] withdrawn" by the Trustee, they were prepared to pay the full payoff amount in the original Settlement Agreement, and the reasons for an auction were no longer present. (Id., ¶ 9.) Debtors requested an unspecified amount of additional time to make full payment and for an order authorizing sale of the property free and clear of any lien of Epic Aviation.

Epic Aviation filed a written Response (Bankr. Doc. #193) making a "limited objection" to the enlargement of time to make the settlement payment. Epic Aviation asserted that the Debtors were essentially conceding that their bid at the auction above $500,000 had been with money they simply did not have. Epic Aviation argued that Debtors had not shown grounds for the Bankruptcy Court to award additional time to comply with their auction obligations.

The Bankruptcy Court conducted a hearing on October 9, 2012. (Doc. #3.) Counsel for Debtors summarized the events at the auction, and stated that because of Epic Aviation's objection to the way the auction was concluded, the Trustee was not in a position to sign a release in exchange for the $825,000 payoff amount. (Id., pp. 4-11.) Counsel stated that he then had the

balance of the funds in his trust account ready to be paid to the Trustee, pending resolution of the Epic Aviation objection.  (<u>Id.</u>, pp. 12-13, 14.)

Counsel for Epic Aviation argued that the terms of sale at the auction did not allow payment conditioned upon the sale of other property, and the Notice clearly required all monies to be paid within 48 hours.  (<u>Id.</u>, pp. 19-20.)  Epic Aviation stated that it sent $825,000 to the Trustee, and it was willing and able to close as the highest bidder at the auction.  (<u>Id.</u>, p. 20.)  Epic Aviation further argued that the auction was noticed as going to the highest bidder, and that the terms and conditions of the auction were violated when the auction was terminated by the Trustee's decision to allow Debtors to pay their original obligation under the Settlement Agreement.  (<u>Id.</u>, p. 21.)

The Trustee's position was that if the Debtors could fund the $825,000 within 48 hours of a Bankruptcy Court ruling, she would accept that as the highest and best offer at the auction.  If the Debtors are unable to fund the $825,000, the Trustee would sell her rights to Epic Aviation as the second highest and best bid.  The Trustee's position was that she had the business judgment and discretion to decide the auction winner.  (<u>Id.</u>, pp. 23-24.)

On October 9, 2012, the Bankruptcy Court filed an Order on Debtors' Emergency Motion for Enlargement of Time to Make Settlement Payment to the Trustee and For Order Authorizing Sale of

the Debtors' Homestead Property (Doc. #1-2).  This Order adopted the oral findings and determinations made at the hearing, in which the Bankruptcy Court found: that the Debtors' motion was timely filed; that the Trustee was in the best position to determine the highest and best bid at the auction; and that if Epic Aviation was determined to be the winning bid and the $825,000 was tendered by the Debtors, Epic Aviation would be obligated to accept the payment.  (Doc. #3, pp. 29-30.)  The Court noted that the Settlement Agreement did not have a deadline for payment, did not provide for interest, and did not provide for anything other than that the Debtors would list the property for sale.  (Id., pp. 33-34.)  The Bankruptcy Court's Order granted the emergency motion for enlargement of time "only to the extent that the Debtors seek additional time to fund the purchase price at the auction sale by paying $825,000 in full satisfaction of the Settlement."  (Doc. #1-2, p. 2.)  The Order further stated:

> 2.   The Debtors are directed to wire transfer $772,500 (the difference between the $825,000 bid and the $52,500 deposit) to the Trustee on or before 5:00 P.M., October 11, 2012. If the Debtors timely make this payment, (i) the Debtors will be deemed to be the successful bidder at the auction sale; (ii) the Settlement will be deemed paid in full, (iii) the Trustee will provide the Debtors a release and satisfaction of the lien created by recordation of the Settlement Order, and (iv) the Trustee will return all monies paid by Epic Aviation, LLC, in connection with the auction.

> 3.   If the Debtors fail to pay the $772,500 as provided in paragraph 2 of the Order, then (i) Epic Aviation, LLC, will be deemed the successful bidder at the auction/sale; (ii) the Trustee will assign all of her

-14-

rights under the Settlement to Epic Aviation, LLC, and
(iii) the Trustee will return the deposit paid by the
Debtors in connection with in the auction.

(Doc. #1-2, pp. 2-3.)

The Debtors timely paid the remaining balance of the $825,000,
and on October 10, 2012, the Trustee executed a Satisfaction and
Release of Lien and Interest (Satisfaction and Release), releasing
Debtors of their obligations under the Settlement Agreement and
releasing the Trustee's lien on the Debtors' home, and the
Satisfaction and Release was recorded in the public records.
(Bankr. Doc. #198.)

On October 10, 2012, Epic Aviation filed its Notice of Appeal
(Doc. #1) of the Order on Debtors' Emergency Motion for Enlargement
of Time to Make Settlement Payment to the Trustee and For Order
Authorizing Sale of  the Debtors' Homestead Property (Doc. #1-2).[4]
After the appeal was transmitted, appellees filed an Emergency
Motion to Dismiss Appeal as Moot (Doc. #13), which was supplemented
(Doc. #15) and responded to by Epic Aviation (Doc. #17).  This
First Appeal is also referred to as the Auction Order Appeal.

---

[4]Appellant Epic Aviation filed an Initial Brief (Doc. #11),
Bonita B. Phillips and Jeffrey S. Phillips (appellees) filed an
Answer Brief (Doc. #12), Diane Jensen, Chapter 7 Trustee (Trustee)
filed a Brief (Doc. #16), and Epic filed separate Reply Briefs
(Docs. ## 18, 23) in response to the appellees' and Trustee's
briefs.

**E.   Judicial Lien and Request for Stay Pending Appeal:**

On October 10, 2012, the Debtors filed an Emergency Motion to Avoid Judicial Lien of Epic Aviation, LLC (Bankr. Doc. #198) in order to clear title to the house.  On the same date, Epic Aviation filed an Emergency Motion for Stay Pending Appeal (Bankr. Doc. #202) with the Bankruptcy Court.

On October 12, 2012, the Bankruptcy Court held a hearing on both motions.  (Doc. #4.)  After hearing arguments, the Bankruptcy Court summarized the procedural history of the case, concluding that the Trustee essentially called off the auction and decided to allow the Debtors the opportunity to pay the full amount under the Settlement Agreement.  The Bankruptcy Court noted that this could be viewed either as the Trustee determining the Debtors were the highest and best offer at the auction, or that the Trustee determined to go forward with the provisions of the Settlement Agreement.  The Bankruptcy Court found that the Trustee had determined that Debtors' offer was the highest and best offer pursuant to the terms of the auction, and gave Debtors a time limit in which to transmit funds into the Trustee's trust account.  The Bankruptcy Court found that it had the discretion to grant the extension of time, the decision was not clearly erroneous, and the relevant factors did not weigh in favor of granting a stay pending appeal.  (Id., pp. 53-55.)  As to the lien, the Bankruptcy Court indicated that the avoidance would be granted if a Continuous

Marriage Affidavit was filed establishing that the parties were married when the property was acquired and that it was acquired as tenants by the entireties, and then Epic Aviation would have an opportunity to seek reconsideration on a good faith basis. (Id., pp. 65, 68.)  The Affidavit was filed.  (Bankr. Doc. #217.)  Epic Aviation did not seek reconsideration.  Debtors' motion to avoid the judicial lien was granted by the Bankruptcy Court on October 17, 2012.  (Bankr. Doc. #222.)  The stay was denied by the Bankruptcy Court by an order filed on October 23, 2012.  (Bankr. Doc. #236.)[5]

**F.  Lis Pendens Order Appeal:**

On October 12, 2012, Epic Aviation recorded a Notice of Lis Pendens (2:12-mc-38-FTM-29, Doc. #4, Exh. B) in the Collier County public records against the Debtors' residence based upon its interests and rights under its appeal of the Auction Order.

On October 30, 2012, Debtors filed an Emergency Motion to Dissolve Lis Pendens Filed by Epic Aviation, LLC (Bankr. Doc. #244) asserting that the lis pendens filed against their home was improper and illegal under Florida law.  Epic Aviation's Response (Bankr. Doc. #250) asserted that the Bankruptcy Court lacked

---

[5]On October 26, 2012, Epic Aviation filed an Emergency Motion for Stay Pending Appeal with the District Court.  On November 9, 2012, the undersigned denied the motion for stay in a written Opinion and Order.  In re Phillips, 2:12-mc-38-FtM-29, Doc. #7, 2012 WL 5467541 (M.D. Fla. Nov. 9, 2012).

subject-matter jurisdiction over the motion after the filing of a notice of appeal, and in any event, the lis pendens was lawful.

The Bankruptcy Court held a hearing on November 5, 2012. (Bankr. Doc. #257.)  On November 7, 2012, the Bankruptcy Court issued its Order Granting Debtors' Emergency Motion to Dissolve Lis Pendens Filed by Epic Aviation, LLC (Bankr. Doc. #254).  The Bankruptcy Court found "that there is an insufficient nexus between the Debtors' jointly owned homestead property . . . and the dispute asserted by Epic relating to the appeal of this Court's Order . . . .", granted the motion, and dissolved the lis pendens.  (Bankr. Doc. #254, p.1; Bankr. Doc. #257, p. 28.)  Epic Aviation filed a Notice of Appeal (Bankr. Doc. #256) from this order (the Lis Pendens Order Appeal, or the Second Appeal).[6]  After the appeal was transmitted, appellees filed an Emergency Motion to Dismiss Appeal as Moot (2:12-cv-669-FTM-29, Doc. #4), which was responded to by Epic Aviation (Id., Doc. #13).  This Second Appeal is also referred to as the Lis Pendens Order Appeal.

## G.  The Sale Order Appeal:

Debtors subsequently obtained a written contract to sell their residence for $4.375 million, but the sale was contingent upon Debtors obtaining dismissals or resolution of the appeals and Epic

---

[6]In 2:12-cv-669-FTM-29, appellant Epic Aviation filed an initial Brief of Appellant (Doc. #15), Bonita B. Phillips and Jeffrey S. Phillips (appellees) filed an Answer Brief (Doc. #18), and Epic filed a Reply Brief (Doc. #19).

Aviation's lis pendens.  (Doc. #15, ¶ 2; 2:12-cv-669-FTM-29, Doc. #4.)

On January 11, 2013, Debtors filed an Emergency Motion For Order Approving Sale of Debtors' Property Free and Clear of any Interest of Epic Aviation, LLC (Bankr. Doc. #283; 2:12-cv-669-FTM-29, Doc. #16, Exh. A) in the Bankruptcy Court.  Debtors sought Bankruptcy Court approval of the sale of their residence free and clear of Epic Aviation's interests, i.e., its interests created by the pending appeals.  Debtors pointed out that while Epic Aviation had a $322,603.30 pre-petition judgment against Mr. Phillips, Epic Aviation would never have rights against the residence, which was jointly owed with Mrs. Phillips as tenants by the entirety.  (Id., ¶ 8.)

Epic Aviation filed a Response (Bankr. Doc. #286; 2:12-cv-669-FTM-29, Doc. #16, Exh. B), stating that the residence was claimed as exempt property by debtors, and was therefore no longer property of the bankruptcy estate.  Therefore, Epic Aviation argued, Debtors could not sell the property as requested.

The Bankruptcy Court held a hearing on January 15, 2013. (2:13-mc-5-FTM-29, Doc. #1-2.)  On January 17, 2013, the Bankruptcy Court filed an Order Granting Debtors' Emergency Motion for Order Approving Sale of Debtors' Property Free and Clear of Any Interest of Epic Aviation, LLC (2:13-mc-5-FTM-29, Doc. #1-1; Bankr. Doc. #288).  The Bankruptcy Court found that it had the power and

authority to grant the request pursuant to Section 105 of the Bankruptcy Code, and it was in furtherance of its prior October 9, 2007 order approving the Settlement Agreement, the October 9, 2012 order enlarging time to make settlement payment, its October 17, 2012 order to avoid judicial lien, and its November 7, 2012, order dissolving lis pendens.   The Bankruptcy Court agreed with Epic Aviation that § 363 did not authorize the sale of the property, but found its authority under § 105.   The Order authorized Debtors to sell their residence free and clear of any interest of the Chapter 7 Trustee and/or Epic Aviation, including any interest arising out of Epic Aviation's appeals.   As a condition of the sale, Debtors were required to escrow the net proceeds of the sale, and any interests of the Trustee or Epic Aviation in the property was to attach exclusively to the net proceeds and not follow the property transferred to the buyer so that marketable title may pass to the buyer.

Epic Aviation filed a third Notice of appeal (2:13-mc-5-FTM-29, Doc. #1-3; Bankr. Doc. #289) (the Sale Order Appeal).   Epic also filed an Emergency Motion For A Stay Pending Appeal (2:13-mc-5-FTM-29, Doc. #1), to which Debtors filed a Response in Opposition (Id., Doc. #2).   This motion is pending in the miscellaneous case, and appeal is now ripe.   See 2:13-cv-113-FTM-29[7].

---

[7]Appellant Epic Aviation filed a Brief (Doc. #9), Bonita B. Phillips and Jeffrey S. Phillips (appellees) filed an Answer Brief (continued...)

**III.**

A threshold matter is Debtors' Emergency Motion to Dismiss [the First] Appeal as Moot (Doc. #13) filed on November 20, 2012, and Supplement (Doc. #15) filed on November 28, 2012.  Appellant filed a Response in Opposition (Doc. #17) on December 4, 2012. Debtors argue that the full payment of the Settlement Agreement amount and the recording of a release by the Trustee results in the inability of the court to provide any effective relief, and thus renders Epic Aviation's appeal moot.  The Court disagrees.

Article III of the United States Constitution restricts the power of federal courts to "Cases" and "Controversies," which must be present through all stages of federal judicial proceedings, including appeal.  Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013). While mootness will defeat the case or controversy requirement, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  Knox v. SEIU, Local 1000, 132 S. Ct. 2277, 2287 (2012)(citations and quotation marks omitted).  See also In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992).  This does not require the ability to return the parties to the *status quo ante,* but only requires the possibility of a partial remedy.  Church of Scientology v. United States, 506 U.S. 9, 12-13 (1992); Chafin, 133 S. Ct. at 1023;  FTC

_____

[7](...continued)
(Doc. #10) and appellant filed a Reply Brief (Doc. #11).

v. Phoebe Putney Health Sys., Inc., 133 S. Ct. 1003, 1009 n.3 (2013).

The First Appeal is not moot because it is possible for the Court to grant Epic Aviation some effective relief.  This could include an order requiring the Trustee to return $825,000 to the Phillips and to accept $825,000 from Epic Aviation, or re-opening the auction, or some injunctive relief to preserve the *status quo*. The real property has not been sold, the most recent contract having fallen through, so there is no issue of statutory mootness under 11 U.S.C. § 363(m).  Even if the Debtors do sell the home pursuant to the Bankruptcy Court's Order at issue in the Third Appeal, the appeals will not be moot.  The Bankruptcy Court has directed that the $825,000 obtained from the sale of the home be placed in escrow.  The presence of the escrowed funds would defeat the assertion of mootness.  Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735 (2013).  The motion to dismiss the First Appeal as moot is **DENIED**.

## IV.

Epic Aviation asserts that the Auction Order Appeal, while ostensibly about an order granting a brief extension of time to pay money, actually raises claims as to the proper conduct of the auction itself. Epic Aviation stated at oral argument that, in its view, the Trustee's acceptance of $825,000 from the Debtors was pursuant to a determination that the Debtors were the winning

bidder at the auction, not as a result of the consummation of the Settlement Agreement.  Both the Trustee and the Debtors stated at oral argument that, in their view, the Trustee's acceptance of $825,000 from the Debtors was pursuant to the Settlement Agreement, not as a result of the auction.

As summarized above, and with the benefit of hindsight, it becomes apparent that neither the Trustee nor the Bankruptcy Court has been consistent in the characterization of the events.  At the auction, the Trustee stated that if Debtors paid the $825,000 within 48 hours she would not sell her rights under the Settlement Agreement, but would accept their full payoff.  In their motion for an extension of time, Debtors took the position that they were not the winning bid at the auction, but were merely paying of the full Settlement Agreement amount (and therefore the 48 hour auction deadline did not apply).  At the hearing, the Trustee's position morphed somewhat.  She stated that if the Debtors funded the full amount within 48 hours of an order, she would accept the Debtors as the highest and best offer at the auction; otherwise, Epic Aviation would prevail as the second highest and best bid.  The Bankruptcy Court's Order from this hearing found that the Trustee had determined the Debtors' bid was the highest and best, and that if Debtors timely paid, Debtors would "be deemed to be the successful bidder at the auction sale".  (Doc. #1-2.)  After an October 12, 2012 hearing, the Bankruptcy Court found that the Trustee

essentially called off the auction and decided to allow the Debtors to pay off the Settlement Agreement amount, but then also concluded that the Trustee had found Debtors' offer was the highest and best pursuant to the terms of the auction.  (Doc. #4, pp. 46-47.)

The outcomes of the appeals, however, are not dependent on how the events are characterized.  Under either characterization, the final orders of the Bankruptcy Court are due to be affirmed.

**A.  Consummation of Settlement Agreement:**

If the Trustee's acceptance of $825,000 from the Debtors is viewed as having been done pursuant to the terms of the Settlement Agreement, it is clear that the appeal of the order extending the time for payment is without merit.  The Trustee's acceptance of the full $825,000 from the Debtors needed no additional Bankruptcy Court approval.  The amount had been approved by the Bankruptcy Court in 2007, and the money was not yet due because the Debtors' house had not sold.  The Trustee's decision to give the Debtors 48 hours to make the full payment, or to resume the auction to sell the Trustee's rights in the Settlement Agreement, was well within her authority under the Settlement Agreement.  While there was no need for Bankruptcy Court approval if this was payment under the Settlement Agreement, once involved it cannot be seriously argued that the Bankruptcy Court erred by approving the Trustee's 48 hour deadline extension.  A Bankruptcy Court's extension of time is reviewed under the abuse of discretion standard, In re Coady, 588

F.3d 1312, 1316 (11th Cir. 2009), and granting a 48 hour extension to pay a debt that was not yet due cannot be an abuse of discretion.  Indeed, to do otherwise under the facts of this case would have been an abuse of discretion.  Even if the Trustee's 48 hour deadline was not met, the Trustee would have had no legal basis to refuse the Debtors' tender of the full amount if it occurred any time prior to the sale of the Trustee's rights in the Settlement Agreement.  The Bankruptcy Court's order extending the time period for payment of the $825,000 was not an abuse of discretion if payment was being made pursuant to the Settlement Agreement.

Epic Aviation argues, however, that the Trustee could not have been accepting the $825,000 pursuant to the Settlement Agreement because the Trustee's ability to do so ended with her decision to hold an auction.  The Court disagrees.  The Trustee's decision to auction her rights under the Settlement Agreement did not limit or terminate the Debtors' rights under the Settlement Agreement. Debtors had the right to pay $825,000 in full satisfaction of the Settlement Agreement, and that right did not terminate because the Trustee was in the process of auctioning her own rights under the Settlement Agreement or because Debtors participated in the auction.

**B.  Winning Bid at Auction:**

The result does not change if the events are viewed as a determination that Debtors were the winning bidder at the auction. Under this scenario, Epic Aviation argues that the Bankruptcy Court erred as a matter of law, which inherently qualifies as an abuse of discretion, because the Debtors were simply not the winning bidder. Thus, Epic Aviation argues, the Bankruptcy Court granted an extension of time for payment to a non-winning party, and effectively precluded the winning party (Epic Aviation) from having its tender of $825,000 accepted by the Trustee.

It is clear that a bankruptcy trustee, with approval of the Bankruptcy Court, has the power to auction the property of the bankruptcy estate.  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1).  A trustee's management of the procedural details surrounding bidding and sale are "ultimately a matter of discretion that depends upon the dynamics of the particular situation."  In re Nuttery Farm, Inc., 467 F. App'x 711, 712 (9th Cir. 2012)(quoting In re Mickey Thompson Entm't Group, Inc., 292 B.R. 415, 422 (9th Cir. BAP 2003)).  The Trustee is entitled to exercise "business judgment" in deciding which bid to accept, and this business judgment is entitled to "great judicial deference."  In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)(citations omitted).  See also In re Lionel

Corp., 722 F.2d 1063 (2d Cir. 1983); In re Moore, 608 F.3d 253, 263 (5th Cir. 2010).  Matters within the Trustee's business judgment include determining which bid to accept as the best and highest bid, and electing to accept a lower monetary bid.  In re Moore, 608 F.3d at 263 ("a bankruptcy court may accept a lower bid in the presence of sound business reasons"); In re Castre, Inc., 312 B.R. 426, 430-31 (Bankr. D. Colo. 2004)("the trustee [ ] is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and, although the trustee's [ ] discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands."); In re Bakalis, 220 B.R. at 533 ("a 'highest' bid is not always the 'highest and best' bid.").  The Bankruptcy Court evaluates whether the Trustee exercised sound and reasonable business judgment, but without substituting its own judgment for that of the Trustee.  2-363 Collier Bankruptcy Manual ¶ 363.02, at § 363(b)[4] (4th Ed. 2012). Factors considered by the Bankruptcy Court include whether there was an improper motive or bad faith, the fairness of the price, and the adequacy of the procedures followed.  In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002).  Even an auction sale confirmed by the Bankruptcy Court can be vacated due to concerns about the winning bidder, although under more limited circumstances than in deciding which bid should initially be

accepted.  In re WPRV-TV, Inc., 983 F.2d 336, 341 (1st Cir. 1993).

In this case, the Bankruptcy Court deferred to and approved the Trustee's business judgment that Debtors' offer to meet Epic Aviation's full price $825,000 bid was the "highest and best offer." (Id., p. 48.)  The Bankruptcy Court's decision is fully supported in the record.

The Debtors' bid was not a lower bid, but was for the same dollar amount as made by Epic Aviation.  The $825,000 was the full economic value of the Settlement Agreement.  The Trustee could legitimately question the motives of Epic Aviation, since there does not appear to be any reasonable economic incentive for Epic Aviation to pay $825,000 in order to purchase an agreement which would allow it to receive $825,000 at an indeterminate time in the future without interest.  The Trustee also legitimately considered that Epic Aviation's avowed purpose was to initiate litigation against the Debtors based on the Settlement Agreement.  The anticipated litigation as articulated by Epic Aviation's counsel has no record support, would clearly be only for the purpose of harassment, and would injure the bankruptcy estate by embroiling the Trustee in potentially costly and numbing litigation to the financial detriment of the bankruptcy estate.  The Bankruptcy Court clearly found the proposed litigation to be adequate justification to reject Epic Aviation's bid, doc. #4, pp. 13-14, as does this Court.  The order of the Bankruptcy Court granting an extension of

time, was not an abuse of discretion even if viewed as a referendum on the auction process.

Appellant relies heavily on <u>In re Moore</u>, 608 F.3d 253 (5th Cir. 2010), but the present case is clearly distinguishable.  The Trustee in this case did not reach a settlement instead of holding an auction or considering higher offers.  Rather, the settlement in this case occurred years before, an auction was in fact conducted in this case, objections were considered at a hearing by the court, and the Trustee then determined the better offer was to allow Debtors to pay the full amount set forth in the Settlement Agreement.

The Bankruptcy Court has the discretion, "for cause shown" to enlarge a set period of time if the request is timely made.  Fed. R. Bankr. P. 9006(b)(1). In summary, the Bankruptcy Court did not abuse its discretion by accepting the Trustee's business judgment and approving the acceptance of the Debtors' bid.

## V.

The Lis Pendens Order dissolved and extinguished the Notice of Lis Pendens recorded at O.R. 4845, Page 1105 of the Public Records of Collier County on debtors' jointly owned homestead property. (Bankr. Doc. #254.)  Based on the findings in Section IV above, the Auction Order is due to be affirmed and therefore the lis pendens based on the first filed appeal from this Order is no longer valid. As a result, the Lis Pendens Order will also be affirmed because

lis pendens is properly dissolved and the Court need not address the nexus arguments.

**VI.**

The Sale Order granted debtors' motion to approve a sale of the real property, free and clear of any interest of Epic Aviation. In granting the motion, the Bankruptcy Court authorized the sale, free and clear of any interest arising from the first two appeals but making the sale conditional on debtors placing in escrow the net proceeds from the sale, after payment of liens, mortgages, and ordinary expenses of sale and commissions, with the interests of the Chapter 7 Trustee and Epic Aviation to attach to the net proceeds without following the property so that marketable title could pass to a buyer. At oral arguments before the undersigned, debtors indicated that the appeal was essentially moot because there was no buyer with a contract ready to purchase the property and that the Bankruptcy Court's Order could be vacated. On May 6, 2013, appellees made a Supplemental Filing (Doc. #29) indicating that a new party has expressed an interest in the property. The Court will vacate the Order without prejudice to any pending contract that may arise.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Appellees' Emergency Motion to Dismiss Appeal as Moot (Doc. #13) in 2:12-cv-585-FTM-29 is **DENIED.**

2.   The Order on Debtors' Emergency Motion for Enlargement of Time to Make Settlement Payment to the Trustee and For Order Authorizing Sale of the Debtors' Homestead Property (Bankr. Doc. #197) is **AFFIRMED.**

3.   Appellees' Emergency Motion to Dismiss Appeal as Moot (Doc. #4) in 2:12-cv-669-FTM-29 is **DENIED.**

4.   The Order Granting Debtors' Emergency Motion to Dissolve Lis Pendes Filed by Epic Aviation (Bankr. Doc. #254) is **AFFIRMED.**

5.   Appellant's Emergency Motion for a Stay Pending Appeal (Doc. #1) in 2:13-mc-5-FTM-29 is **DENIED AS MOOT.**  The Clerk shall close the miscellaneous file.

6.   The Order Granting Debtors' Emergency Motion for Order Approving Sale of Debtors' Property Free and Clear of Any Interest of Epic Aviation (Bankr. Doc. #288) in 2:13-cv-113-FTM-29 is **VACATED** without prejudice.

7.   The Bankruptcy Court may enter any subsequent Orders as necessary to facilitate payment of the $825,000 to the Chapter 7 Trustee for distribution, consistent with this Opinion and Order.

8.   The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeals, and close the files.

**DONE AND ORDERED** at Fort Myers, Florida, this ___7th___ day of May, 2013.

_____
JOHN E. STEELE
United States District Judge

-31-

Copies:
Clerk, Bankr. Ct.
Hon. Caryl E. Delano
Counsel of record